FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

ꝟMFD: USAO 2017R00078

2018 NOV -1  PM 3: 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

CLERK'S OFFICE

BY_____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. |
| v. | * | |
| | * | (Theft of Government Property, |
| PETER OLUWOLE COLE, | * | 18 U.S.C. § 641; Social Security Fraud, |
| | * | 42 U.S.C. § 408(a)(4); Bank Fraud, |
| Defendant | * | 18 U.S.C. § 1344; Aiding & Abetting, |
| | * | 18 U.S.C. § 2; Forfeiture, 18 U.S.C. |
| | * | § 981(a)(1)(C), 18 U.S.C. § 982(a)(2), |
| | * | 28 U.S.C. § 2461(c), 21 U.S.C. § 853) |
| | * | |

*******

## INDICTMENT

### COUNT ONE
### (Theft of Government Property)

The Grand Jury for the District of Maryland charges that:

### Introduction

At all times relevant to the charges in this Indictment:

1.      The Social Security Administration ("SSA") was an agency of the United States within the United States Government that administered programs under the Social Security Act, Title 42, United States Code, Section 301, et seq. These programs included Social Security Disability Insurance ("SSDI"), Child's Insurance Benefits ("CIB"), and Retirement Insurance Benefits ("RIB"). To have received monthly RIB payments, persons must first have worked for a sufficient period of time in jobs in which they paid Social Security taxes and be at least 62 years of age.

2.      In order to be awarded SSDI, an individual likewise was required to work for a sufficient period of time and have paid social security taxes, but they also must have had a

medical condition that meets SSA's definition of a disability.  There was no age requirement to collect SSDI benefits payments.  SSA would only make SSDI benefits payments to an individual as long as they were unable to work; beneficiaries were notified at the time of application, and periodically while receiving benefits, of their responsibility to inform SSA if they returned to work or their disabling condition improved.  The occurrence of either of these events could have caused SSA to cease SSDI benefits payments to a beneficiary.

3.      An individual also may have received CIB on behalf of their children up to age 19 if the individual had worked and earned enough Social Security credits, and the individual was entitled to Social Security retirement or disability benefits.

4.      **PETER OLUWOLE COLE ("COLE")** applied for and received three social security numbers (SSNs), the last four digits of which were 3853, 6806, and 9387, respectively. **COLE** used these SSNs to defraud SSA by working and simultaneously collecting SSDI and CIB benefits payments to which he was not entitled.

5.      In or about April 1983, **COLE** applied for his first SSN, which ended in 3853. On this application, he stated he was born in "Sinoe County, Liberia" to parents whose initials are V. M. and H. C.

6.      In or about 1989, **COLE** applied for his second SSN, which ended in 6806.  On this application, he stated he was born in "Sierra Leone, West Africa" to parents whose initials are M. W. and D. C.  When asked if he had ever applied for or received a social security number, **COLE** checked the "No" box.

7.      In or about 1997, **COLE** applied for his third SSN, which ended in 9387.  On the application, he stated he was born in "Monrovia Liberia – West Africa" to parents whose initials

2

are J. C. and H. C. **COLE** again checked the "No" box when asked if he had ever applied for or received a social security number.

8.      In or about 2006, **COLE** applied for and received SSDI benefits under SSN 6806 based on a disability diagnosis defined by SSA as "disorders of the back." As of April 2017 when **COLE's** SSDI benefits payments ceased, he was receiving $1,738 per month from SSA.

9.      From at least in or about 2008 through in or about April 2017, **COLE** was employed at CMC Management Corp., performing property maintenance, and eventually becoming a maintenance supervisor earning more than $70,000 per year under SSN 9387.

10.      In or about March 2007, on the basis of his SSDI benefits, **COLE** applied for CIB for his child, D.C., again, under SSN 6806. In or about May 2007, SSA approved **COLE's** claim and began paying him $612 per month in CIB payments.

11.      As a result of the income **COLE** earned from his employment under SSN 9387, **COLE** was not entitled to the SSDI or CIB benefits payments he received under SSN 6806.

12.      In March 2016, SSA required **COLE** to complete a Work Activity Report. **COLE** reported that he had not worked since 2006. Under "Current or Most Recent Employer's Name," the form was pre-completed by SSA and read, "CMC Management Corp." **COLE** wrote, "I do not know the above company. Someone may be working with my social number." **COLE** also wrote on the form, "I am unable to do nothing for myself," and, "I am still receiving my disability, but if it's time [to] receive my full social security payments, I will appreciate that since I am not able to work anymore."

13.      These statements were false. **COLE** was working for CMC Management Corp. as a facilities engineer at the time he submitted these statements to SSA.

3

14.    In or about January 2016, **COLE** applied for and began receiving RIB payments under SSN 3853.  When applying, **COLE** falsely stated that he had not worked, and did not expect to work that year, nor had he worked in the two prior years.  **COLE** also denied having any prior marriages or children, which was also untrue, and denied ever having used another SSN.

15.    By unlawfully using multiple SSNs and failing to disclose that fact to SSA, **COLE** earned income and received RIB payments while also receiving SSDI and CIB payments of approximately $118,000 to which he was not entitled.

## The Charge

16.    Between in or about November 2006 and in or about April 2017, in the District of Maryland, the defendant,

### PETER OLUWOLE COLE,

did embezzle, steal, purloin, and knowingly convert to his use and the use of another, money of the United States, whose value exceeded $1,000, namely Social Security Disability Insurance benefits payments and Child's Insurance Benefits payments, to which he was not entitled.

18 U.S.C. § 641
18 U.S.C. § 2

## COUNT TWO
### (Social Security Fraud)

The Grand Jury for the District of Maryland further charges that:

1.      The allegations of Paragraphs 1 through 15 of Count One are incorporated here.

2.      Between in or about November 2006 and in or about April 2017, in the District of

Maryland, the defendant,

### PETER OLUWOLE COLE,

having knowledge of the occurrence of any event affecting the initial and continued right of

payment under Subchapter II of Title 42, United States Code, did conceal and fail to disclose

said event with intent to fraudulently secure payment in a greater amount than is due and when

no payment is authorized; to wit, the defendant concealed and failed to disclose work activity

and related earnings he obtained under SSN 9387, for the purpose of causing the Social Security

Administration to continue to make Social Security Disability Insurance and Child's Insurance

Benefits payments to the defendant under SSN 6806.


42 U.S.C. § 408(a)(4)
18 U.S.C. § 2

## COUNT THREE
### (Bank Fraud)

The Grand Jury for the District of Maryland further charges that:

### Introduction

1.      The allegations of Paragraphs 1 through 15 of Count One are incorporated here.

2.      Plaza Home Mortgage, Inc. ("Plaza") is a financial institution headquartered in San Diego, California.

3.      Prior to issuing a mortgage loan, Plaza evaluated the creditworthiness of loan applicants through a review of reports of prospective buyers' credit profiles. An individual's credit profile is identified by that person's SSN.

### Scheme to Defraud

4.      Between in or about September 2015 and in or about October 2015, in the District of Maryland and elsewhere, the defendant,

### PETER OLUWOLE COLE,

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud a financial institution, that is, Plaza, and to obtain monies, funds, credits, assets, and securities owned by and under the control of Plaza, by means of materially false and fraudulent pretenses, representations, promises, and omissions ("the scheme to defraud").

### Manner and Means of the Scheme to Defraud

5.      It was part of the scheme to defraud that **COLE** established credit profiles under each of his three SSNs, and obtained loans and credit under each of them.

6.      It was further part of the scheme to defraud that, on or about September 30, 2015, **COLE** submitted a mortgage application for the purchase of a residence in Germantown, Maryland for the price of $520,000.

7.     It was further part of the scheme to defraud that, on or about October 14, 2015, **COLE** secured Plaza's approval for a loan in the amount of $510,581 based on the September 30, 2015 application.

8.     It was further part of the scheme to defraud that during the application process, **COLE** disclosed both his SSA income and his employment income, but only disclosed the existence of one of his SSNs, 9387.

9.     It was further part of the scheme to defraud that, by failing to disclose the existence of SSNs 3853 and 6806, **COLE** omitted material information in his mortgage loan application to Plaza regarding significant financial liabilities **COLE** incurred under the unreported SSNs, including an automobile loan on which **COLE** owed approximately $44,000, as well as approximately $20,000 in credit card and other unsecured debt.

## The Charge

10.     On or about September 30, 2015, in the District of Maryland, and elsewhere, the defendant,

### PETER OLUWOLE COLE,

knowingly and willfully executed and attempted to execute the scheme to defraud by failing to disclose the existence of multiple social security numbers and associated financial liabilities in applying for a mortgage loan from Plaza.

18 U.S.C. § 1344
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.       Pursuant to Federal Rule of Criminal Procedure 32.2, notice is given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2) and 28 U.S.C. § 2461(c) as a result of **COLE**'s convictions under Counts One and Three of the Indictment.

### Theft of Government Property Forfeiture

2.       As a result of the offense set forth in Count One of the Indictment, the defendant,

### PETER OLUWOLE COLE,

shall forfeit to the United States any and all property, real or personal, constituting or derived from proceeds traceable to any such violation.

### Bank Fraud Forfeiture

3.       As a result of the offense set forth in Count Three of the Indictment, the defendant,

### PETER OLUWOLE COLE,

shall forfeit to the United States any and all property, real or personal, constituting, or derived from, proceeds the defendant obtained directly or indirectly as a result of such violation.

### Substitute Assets

4.       If any of the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

    a.       cannot be located upon the exercise of due diligence;

    b.       has been transferred or sold to, or deposited with, a third person;

    c.       has been placed beyond the jurisdiction of the Court;

8

d.      has been substantially diminished in value; or,

e.      has been commingled with other property which cannot be divided
        without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c), to seek forfeiture of any other property of the defendant up to the value of the

forfeitable property, that is, $628,000.


18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(2)
28 U.S.C. § 2461(c)
21 U.S.C. § 853

Robert K. Hur
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED

Date: November _/_, 2018

Foreperson